## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **STEFANO GRANATA;** | : | Civil Rights Complaint |
| **JUDSON THOMAS,** | : | 42 U.S.C. § 1983 |
| **COLBY CANNIZZARO;** | : | |
| **CAMERON PROSPERI;** | : | |
| **THE GUN RUNNER, LLC;** | : | |
| and **FIREARMS POLICY** | : | |
| **COALITION, INC.** | : | |
| Plaintiffs | : | CIVIL ACTION NO. |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MAURA HEALEY,** in her official | : | |
| capacity as Attorney General of the | : | |
| Commonwealth of Massachusetts; and | : | |
| **THOMAS TURCO,** in his official | : | |
| capacity as Secretary of Executive | : | |
| Office of Public Safety and Security | : | |
| of the Commonwealth of | : | |
| Massachusetts, | : | |
| Defendants | : | |

Come now Plaintiffs Stefano Granata, Judson Thomas, Colby Cannizzaro, and Cameron

Prosperi ("Individual Plaintiffs"), THE GUNRUNNER, LLC ("Retailer Plaintiff"), and Firearms

Policy Coalition, Inc., ("Institutional Plaintiff") (collectively "Plaintiffs"), and allege as follows:

## INTRODUCTION

1.      Under the auspices of an Approved Firearms Roster and related regulations

enforced by the Defendants in this action, the Commonwealth of Massachusetts bans the

commercial sale and transfer of numerous handguns otherwise in common use and widely

available for purchase throughout this country and which are thus protected "bearable arms" under

the Second Amendment to the United States Constitution, thereby leaving ordinary law-abiding

citizens with little to no means of lawfully acquiring any of these protected arms in the exercise of

their fundamental constitutional right to keep and bear arms. Indeed, the number of handguns available for commercial sale to ordinary individuals in Massachusetts is a small fraction of the constitutionally protected handguns in common use and widely available throughout the county. The laws and regulations underlying this regulatory scheme consist of (i) sections 123, clauses 18 to 21, 128, 131K, 131 ¾ of chapter 140 of the Massachusetts General Laws ("M.G.L."), (ii) sections 7.00 through 7.16 of Title 501 of the Code of Massachusetts Regulations ("CMR"), and (iii) sections 16.00 through 16.09 of Title 501 of CMR, as well as the related policies, practices, and customs, implemented and enforced through Defendants' Executive Office of Public Safety and Security ("EOPSS") (collectively referred to as the "Handgun Ban").

2.     Defendants' Handgun Ban violates the Second and Fourteenth Amendments to the United States Constitution and must be declared unconstitutional and enjoined. The plaintiffs in this case seek this relief on behalf of themselves and all those similarly situated who have been and will otherwise continue to be deprived of their fundamental constitutional right to keep and bear handguns for self-defense and other lawful purposes.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

4.     This Court has personal jurisdiction over each of the Defendants because, *inter alia*, at all times relevant to the allegations in this Complaint, each has unconstitutionally acted, continues to act, and threatens to act under the color of laws, policies, customs, and/or practices of the Commonwealth of Massachusetts, and each has done so, continues to do so, and threatens to do so within the geographic confines of the Commonwealth of Massachusetts.

5.     Venue is proper pursuant to 28 U.S.C. § 1391.

6.     The Eastern Division of this Court is appropriate pursuant to Local Rule 40.1(d)(1)(C) because all parties that reside in the District reside in the Eastern Division.

## PARTIES

7.     Plaintiff Stefano Granata is a natural person residing in North Reading, Middlesex County, Massachusetts.

8.     Plaintiff Judson Thomas is a natural person residing in Nantucket, Nantucket County, Massachusetts.

9.     Plaintiff Colby Cannizzaro is a natural person residing in Granville, Hampden County, Massachusetts.

10.    Plaintiff Cameron Prosperi is a natural person residing in Three Rivers, Hampden County, Massachusetts.

11.    Plaintiff The Gunrunner, LLC is a limited liability company organized under Massachusetts law with its office in Middleborough, Plymouth County, Massachusetts. Plaintiff The Gunrunner, LLC is a firearms retailer licensed to sell and transfer firearms under federal law and the law of the Commonwealth.

12.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in California. The purposes of FPC include defending and promoting the People's rights—especially but not limited to Second Amendment rights—advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members in the Commonwealth of Massachusetts, including Plaintiffs Granata, Thomas, Cannizzaro, Prosperi, and The Gunrunner, LLC. FPC represents its members and supporters—who include individual gun owners and other law-abiding persons who wish to purchase new from a licensed retailer, for self-defense and other

lawful purposes, handguns which are banned under the Handgun Ban, like Individual Plaintiffs, licensed Massachusetts firearm retailers like Retailer Plaintiff, shooting ranges, trainers and educators, and others—and FPC brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

13.     Defendant Maura Healey ("Defendant Healey") is sued in her official capacity as Attorney General of the Commonwealth of Massachusetts, an independent constitutional officer responsible for regulating, implementing, and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms which collectively comprise the Handgun Ban and cause the injuries complained of herein. Defendant Healey has authority to cease such enforcement of the Handgun Ban consistent with the relief Plaintiffs seek through this action. *See* M.G.L. c. 12 § 1 and § 3. As detailed herein, Defendant Healey has enforced, is in fact presently enforcing, and threatening to enforce the challenged laws, regulations, policies, practices, and customs underlying the Handgun Ban, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, Retailer Plaintiff, the members and supporters of Institutional Plaintiff, and all those similarly situated to the constitutional injuries complained of in this action.

14.     Defendant Thomas Turco ("Defendant Turco") is sued in his official capacity as Secretary of the Commonwealth's Executive Office of Public Safety and Security (EOPSS), an independent constitutional office within the Executive branch. *See* https://budget.digital.mass.gov/bb/gaa/fy2019/app_19/ga_19/hcdefault.htm#agencies; https://budget.digital.mass.gov/bb/gaa/fy2019/app_19/ga_19/hcnon.htm" https://budget.digital.mass.gov/bb/gaa/fy2019/app_19/ga_19/hcnon.htm. Defendant Turco is responsible for overseeing the Firearms Records Bureau (FRB) through his Department of

Criminal Justice Information Services (DCJIS) and is thus responsible for regulating and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms which collectively comprise the Handgun Ban and cause the injuries complained of herein. Defendant Turco has authority to cease such enforcement of the Handgun Ban consistent with the relief Plaintiffs seek through this action. *See* M.G.L. c. 6A § 2 and § 3. As detailed herein, Defendant Turco has enforced, is in fact presently enforcing, and threatening to enforce the challenged laws, regulations, policies, practices, and customs underlying the Handgun Ban, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, Retailer Plaintiff, the members and supporters of Institutional Plaintiff, and all those similarly situated to the constitutional injuries complained of in this action.

## STATEMENT OF FACTS

### *Constitutional Background*

15.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

16.     The Fourteenth Amendment to the United States Constitution provides in pertinent part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

17.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

18. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests"—including the Commonwealth's claimed public safety and general welfare interests in the Handgun Ban—"the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

19. The "central" holding of the Supreme Court in *Heller* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. And the "quintessential" firearm for self-defense in America is the handgun. *Heller,* 554 U.S. at 629.

20. "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634 (emphasis original).

21. "Just as the First Amendment protects modern forms of communications, ... and the Fourth Amendment applies to modern forms of search, ... the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (internal citations omitted); *accord Caetano v. Massachusetts*, 577 U.S. 411, 416 (2016) (Alito, J., concurring). Thus, this protection extends to all firearms currently in common use that are not both "dangerous per se" and "unusual." *Caetano* at 417 ("A weapon may not be banned unless it is both dangerous *and* unusual.") (italics added).

22. "Dangerous *per se*" does not include the mere inherent propensity of a firearm to cause injury. *Caetano*, 577 U.S. at 418 ("firearms cannot be categorically prohibited just because they are dangerous" in the general sense of the term). Indeed, "the relative dangerousness of a

weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.* "*Heller* defined the 'Arms' *covered by* the Second Amendment to include "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."'" *Id.* (quoting *Heller*, 554 U.S. at 581) (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978)) (italics original in *Caetano*). And an arm is not "unusual" so as to fall outside the ambit of this protection so long as it is "commonly possessed by law-abiding citizens for lawful purposes *today*." *Id.* at 420 (italics original). Handguns in this country are not only not "unusual" but are recognized as "the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

23.     Even "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment[.]" *United States v. Marzzarella*, 614 F.3d 85, 92, n. 8 (3d Cir. 2010). Indeed, "prohibiting the commercial sale of firearms . . . would be untenable under *Heller*." *Id.*

24.     Thus, law-abiding citizens in Massachusetts have a fundamental constitutional right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with, firearms—especially the handgun as the firearm "overwhelmingly chosen by American society" for self-defense, *Heller*, 554 U.S. at 628—as well as ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments.

25.     And this right extends to *all* firearms in common use for self-defense and other lawful purposes. *Caetano*, 577 U.S. at 420. So, the fundamental, individual right to keep and bear firearms in Massachusetts and the rest of the country includes the right to acquire common, modern handguns in common use for self-defense and other lawful purposes—indeed, arms that are lawfully sold and possessed throughout the United States.

*Massachusetts' Handgun Ban*

26.     The laws and regulations underlying Massachusetts' Handgun Gun, and the policies, practices, and customs designed to enforce the same, which are challenged in this action as in violation of the Second Amendment, prevent law-abiding citizens, including Individual Plaintiffs, the members and supporters of Institutional Plaintiff, and similarly situated members of the public, from purchasing, acquiring, and ultimately possessing numerous "instruments that constitute bearable arms" under the Second Amendment as arms in common use and widely available for self-defense and other lawful purposes. And they prevent licensed retailers, including Retailer Plaintiff, from selling or otherwise transferring numerous such arms to law-abiding citizens in otherwise lawful transactions, as part and parcel of the general scheme designed to outlaw these protected arms.

27.     Specifically, in Massachusetts, the sale, transfer, rental, and lease of all "firearms" is strictly regulated. A "firearm" includes any pistol, revolver, or "other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches," i.e., all handguns. M.G.L. c. 140, § 121. It is generally unlawful for anyone except "licensed dealers" to "own or possess" a firearm without first applying for and being granted a Firearms Identification card ("FID") or a License to Carry Firearms ("LTC"). *See* M.G.L. c. 140, §§ 128, 129B-129C; *id.* c. 269, § 10(a).

28.     And it is generally unlawful for anyone to sell, rent, lease, or otherwise transfer any handgun without first applying for and obtaining a license to engage in the commercial transaction of firearms under the provisions of M.G.L. c. 140, § 122. Even with such a license, the ability to actually engage in firearms transactions is strictly limited, as licensees are prohibited on pain of criminal and civil penalties from delivering, selling, renting, leasing, or otherwise transferring any

firearm to anyone who does not have *both* a valid permit to purchase a firearm issued pursuant to M.G.L. c. 140, § 131A, *and* an FID, unless the transferee happens to hold a LTC or happens to meet one of the narrow set of special exemptions to these general restrictions. M.G.L. c. 140, §§ 123, cl. 7-8, 131E(b).

29.     On top of that, it is generally illegal for a licensee (and any other person or entity involved in the chain of commercial supply or distribution of firearms) to sell, rent, lease, transfer, or deliver any firearm that does not meet the specifications established from time to time by the Commonwealth's "gun control advisory board" as being necessary for inclusion on the Massachusetts "Approved Firearms Roster" ("Handgun Roster"). M.G.L. c. 140, §§ 123, cl. 18-21, 131 ¾; 501 CMR 7.02 – 7.07. *See* https://www.mass.gov/doc/approved-firearms-roster-7/download (last visited April 29, 2021). Only firearms lawfully owned or possessed under a license issued before October 21, 1998 are exempted from this prohibition. M.G.L. c. 140, § 123. Licensees are further constrained in their ability to lawfully engage in the sale and transfer of firearms by the "Attorney General's Handgun Sales Regulations," i.e., 940 CMR 16.00, et seq., and "Enforcement Notices."

30.     As the disclaimer on the Handgun Roster itself declares:

Massachusetts licensed firearms dealers should note that the transfers of handguns are also subject to the Attorney General's Handgun Sales Regulations, 940 CMR 16.00, et seq. Firearms on this Approved Firearms Roster do not necessarily comply with the requirements of the Attorney General's Handgun Sales Regulations. Information about those regulations, as well as the Enforcement Notice may be obtained from the Office of the Attorney General and may be accessed on the website of the Attorney General (www.ago.state.ma.us" www.ago.state.ma.us).

https://www.mass.gov/doc/approved-firearms-roster-7/download. Enforcement Notice #3, from February 2002, still featured on the Attorney General's website, further declares that the legality of a licensee's transfer of a firearm is contingent on the firearm's having the child safety features

and tamper resistant serial numbers specified in 940 CMR 16.03 and 16.05, and, when it is a semiautomatic handgun, the load indicators and magazine safety disconnects specified in 940 CMR 16.05. The notice warns that "[i]f a handgun does not satisfy these three additional requirements, then it is a violation of the regulations for a handgun purveyor[1] to transfer that handgun even if the handgun is listed on the Approved Firearms Roster." https://www.mass.gov/files/documents/2016/12/wg/ag-handgun-regulation-enforcement-notices.pdf (last visited April 29, 2021).

31.    A licensee's violation of the restrictions imposed by this regulatory scheme is not only a crime, M.G.L. c. 140, § 128, but also constitutes an unfair and deceptive trade practice subjecting the violator to significant civil penalties, 940 CMR 16.01 – 16.06.

32.    The sale, rental, lease, or other transfer of firearms by or to *non-licensed* individuals is subject to even greater restrictions. The general prohibition against the sale, rental, lease, or other transfer of firearms continues to apply, subjecting the transferor to the criminal penalties established under M.G.L. c. 140, § 128, unless the transaction fits within one of the following set of narrow exceptions for lawful transfers:

1.    The transfer is to a dealer licensed under state or federal law;

2.    The transfer is to a historical society, museum, or institutional collection open to the public; or

3.    The transfer is to someone other than a licensed dealer, a historical society, museum, or institutional collection open to the public, and *all* of the following are true:

---

[1]    A "handgun purveyor" is defined as "any person or entity that transfers handguns to a customer located within the Commonwealth of Massachusetts," excluding those who transfer fewer than five handguns per year. 940 CMR 16.01

a.    The transferor has a valid FID or LTC or is exempted from such requirements under M.G.L. c. 140, § 129C(4)(n), (o), (r), or (s) (which apply to transfers involving legatees, military or law enforcement officers, chartered veteran's organizations, or historical societies, museums, or institutional collections open to the public);

b.    The transferee has (i) a purchase permit *and* an FID, (ii) a purchase permit and is exempt from the FID requirement, or (iii) an LTC;

c.    The transferor makes no more than four such transfers of firearms, including rifles and shotguns, in any one calendar year; and

d.    The transferee reports the transfer to the Commonwealth department of justice within seven days of the firearm's receipt, which report must specifically identify both the transferor and the firearm.

M.G.L. c. 140, §§ 128A, 128B, 131E.

33.    Consequently, licensed retailers are absolutely precluded from transferring any handguns not included on the Handgun Roster and any other handguns prohibited by the Defendant Healey's Handgun Sales Regulations (except grandfathered handguns from before October 21, 1998). All *unlicensed* individuals are precluded from transferring any handguns (whether on or off the Handgun Roster and whether approved or unapproved under the Handgun Sales Regulations) to any ordinary, law-abiding citizens who lack the necessary purchase permits, FID, or special exemptions, and even then, they are limited to four such transfers in any one year.

34.    Obtaining a purchase permit, FID, or LTC for purposes of acquiring a handgun requires meeting specific statutory criteria based on the applicant's age, personal background, and satisfaction of mandated firearms training, and, even then, the granting of these statutory creatures

11

is discretionary. Purchase permits are subject to the licensing official's subjective determination that the purchase, rental, or lease of the firearms "is for a proper purpose," and the official "may revoke such permit at will." M.G.L. c. 140, § 131A. Licensing officials may deny FIDs or LTCs based on their subjective determination that the applicant "could potentially create a risk to public safety" and is therefore "unsuitable." M.G.L. c. 140, §§ 129B, 129B(1½), 131A, 131(d)(i)-(x).

35.     As a result of this stringent regulatory scheme, ordinary law-abiding citizens of Massachusetts are left with very limited opportunity to lawfully acquire *any* handgun, including any handgun approved for commercial sale under the Approved Handgun Roster and the Handgun Sales Regulations, much less one *excluded* from the Handgun Roster or prohibited by the Sales Regulations. Indeed, because licensed retailers are prohibited from transferring any off-Roster or otherwise unapproved handguns (except whatever decades-old, grandfathered handguns may still exist in the market), all ordinary law-abiding citizens—even those bearing the coveted purchase permits, FIDs, and LTCs—are relegated to a secondary market of non-licensed transferors who may transfer no more than four firearms, including shotguns and rifles, in an entire year, and thus who necessarily deal in limited supplies.

36.     On information and belief, the handguns approved for commercial sale to ordinary law-abiding citizens under Defendants' Handgun Roster and Handgun Sales Regulations represent a small fraction of the total number of commercially available handgun makes and models which are constitutionally protected arms in common use for self-defense and other lawful purposes throughout all or the vast majority of the United States. And ordinary law-abiding Massachusetts residents cannot simply look outside the Commonwealth borders to purchase or acquire any of these handguns banned by the Handgun Roster and the Handgun Sales Regulations because federal law requires the use of an in-state licensed dealer to facilitate any purchase or delivery of a handgun

from an out-of-state seller, 18 U.S.C. §§ 922(a)(3), 922(a)(5), and, of course, the in-state dealer must fully comply with Massachusetts law which precludes engaging in the transfer of any handguns not included on the Handgun Roster and otherwise prohibited under the Handgun Sales Regulations.

37.     Thus, ordinary law-abiding citizens seeking to exercise their constitutional right to keep and bear arms with a handgun—"the quintessential self-defense weapon" in America, *Heller*, 554 U.S. at 629—are generally relegated a secondary market of inherently limited supply, and largely consisting of used handguns having no manufacturer's warranty, with sellers who cannot offer the warranties or guarantees licensed dealers can offer. And that market is also beyond the reach of the regulations designed to protect consumers against unfair and deceptive practices, including the protections against the sale of defective or unsafe firearms.[2]

38.     Ultimately then, ordinary law-abiding citizens in Massachusetts are left with little, if any, realistic means of lawfully acquiring any of the numerous handguns banned under the Handgun Roster and Handgun Sales Regulations which are otherwise in common use and widely available outside their Commonwealth for purposes of lawfully exercising their constitutional right to keep and bear arms.

39.     By outright banning the commercial sale of any handgun not included on the Handgun Roster and not otherwise prohibited by the Handgun Sales Regulations, including the many handguns otherwise in common use for self-defense and other lawful purposes, and also severely limiting—if not cutting off entirely—any other opportunity for ordinary law-abiding

---

[2]     *See* 940 CMR 16.01 – 16.06. These regulations only apply to "handgun purveyors," who expressly do not include those who "transfer[] less than five handguns per year." 940 CMR 16.01.

citizens to lawfully acquire any such firearm, Defendants' Handgun Ban effectively operates as a bar to the exercise of the fundamental right to bear protected arms.

40.    Defendants' Handgun Ban represents a policy choice of the Commonwealth regarding which protected arms in common use *it* believes should and should not be made available to its citizens—a choice that "the enshrinement of constitutional rights" under the Second Amendment has taken "off the table." *Heller*, 554 U.S. at 636.

41.    And such a blanket set of prohibitions against a class of protected arms is categorically unconstitutional; that is the essence of the ban the Supreme Court struck down as categorically unconstitutional in the seminal *Heller* case. *Heller*, 554 U.S. at 628 (striking down a handgun ban where it "amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for self-defense purposes).

42.    Moreover, even setting aside its categorically unconstitutional nature and entertaining the Commonwealth's claimed interest in promoting public safety and general welfare, the ban sweeps far too broadly, as any such interest in handgun safety could be adequately achieved through readily available and easily implemented less restrictive alternatives, including producing, providing, and encouraging education, training, and public outreach regarding basic rules of firearm safety, storage, and use.

43.    Indeed, the Commonwealth maintains a website on which it has posted what it calls the "basic rules of firearm safety" and advises its citizens to "[f]ollow these procedures to stay safe." https://www.mass.gov/service-details/firearms-safety (last visited May 6, 2021). These rules, as the Commonwealth presents them, concern nothing more than the manner in which people store, handle, and discharge firearms. *Id.* They make no mention of any special features or devices as necessary or even helpful for law-abiding gunowners "to stay safe" in the use of firearms, much

14

less any of the "childproofing protection" features, magazine safety disconnect mechanisms, or other devices mandated for inclusion on the Handgun Roster. This undermines any claimed interest in maintaining the Handgun Ban to ensure "safe" firearm use and underscores the reality that less restrictive alternatives, in the way of proper education and training, do in fact exist.

44.     Indeed, all the safety devices and features required for inclusion on the Handgun Roster and approval under the Handgun Sales Regulations are subject to failure and thus cannot be relied upon independently as consistent means of ensuring safe and proper firearm operation. So, it is irresponsible, unsafe, and ultimately ineffective to rely on such "safety" devices. Significantly, on information and belief, the safety features that the Commonwealth mandates are not present on many of the handguns otherwise in common use and widely available around the country, including for example, loaded chamber indicators, "childproofing protection" features, and/or magazine safety disconnect mechanisms. Additionally, on information and belief, handguns that have not passed the Commonwealth's "Handgun Drop Test" are constitutionally protected arms in common use for self-defense and other lawful purposes throughout the United States.

45.     Ironically, some of Massachusetts' "safety" requirements, such as the mandated 10-lb. trigger pull—which is nearly double the weight of many widely used law enforcement-issued duty handguns, *see e.g.,* https://projects.nfstc.org/firearms/module07/fir_m07_t05_03.htm—make handguns so outfitted *more* difficult to operate effectively and thus *more* difficult to operate safely.

46.     The attributes, systems, and "safety" devices required under Massachusetts' Handgun Ban simply cannot replace safe and responsible gun handling or education based on the fundamental rules of firearm safety, and, for the same reason, the absence of such features cannot justify their outright ban under the Handgun Roster and Handgun Sales Regulations, especially when the handguns are constitutionally protected arms and numerous such handguns are otherwise

in common use and widely available. And, fundamentally, such arms simply cannot be banned, particularly not without any reasonable degree of tailoring—much less narrow tailoring—in relation to the claim interest. *See Packingham v. North Carolina*, __ U.S. __, 137 S. Ct. 1730, 1736 (2017) (even under intermediate scrutiny, a law must be "narrowly tailored to serve a significant governmental interest").

### *Injury to the Plaintiffs*

47.   Plaintiff Granata currently holds a valid LTC in the Commonwealth. Plaintiff Granata desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants. But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Granata would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the following handguns which are prohibited from commercial sale by the Handgun Ban: a fifth generation Glock 19, a Sig Arms Model 1911 "We the People" edition, and/or a Sig Arms Model 1911 "TacOps" edition. All these handguns are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned. Plaintiff Granata is a member of Firearms Policy Coalition.

48.   Plaintiff Thomas holds a valid LTC in the commonwealth. Plaintiff Thomas desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants. But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Thomas would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the following handguns which are prohibited from commercial sale by the Handgun Ban: a fifth generation Glock 19 and/or 17, CZ-USA DW Kodiak 10mm, CZ-USA 75 Compact 9mm, CZ-USA P-10 9mm, Magnum Research Desert Eagle XIX .50AE, Kimber Ultra carry II .45, Kimber KHX custom .45, Kimber Desert Warrior .45, and/or a Nighthawk

16

Custom Heinie Signature Recon. All these handguns are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned. Plaintiff Thomas is a member of Firearms Policy Coalition.

49.     Plaintiff Cannizzaro holds a valid LTC in the commonwealth. He has honorably served six years in the Air Force reserves, he has served as a law enforcement officer for four years, and he has completed numerous hours of law enforcement firearms training. Plaintiff Cannizzaro desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants. But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Cannizzaro would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the following handguns which are prohibited from commercial sale by the Handgun Ban: a Kimber Ultra Carry 2 1911, CZ P-09, and/or a Sig P365XL. All these handguns are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned. Plaintiff Cannizzaro is a member of Firearms Policy Coalition.

50.     Plaintiff Prosperi holds a valid LTC in the Commonwealth. He has served in law enforcement, as a Campus Police Officer for Holyoke Community College, and is currently enrolled in the Western Massachusetts Police Academy. Plaintiff Prosperi desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants. But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Prosperi would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the following handguns which are prohibited from commercial sale by the Handgun

Ban: a CZ Tactical Sport, CZ Tactical Sport Orange, Beretta 92X Performance, and/or a CZ P-10F. All these handguns are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned. Plaintiff Prosperi is a member of Firearms Policy Coalition.

51.     Plaintiff The Gunrunner, LLC, is a state and federally licensed handgun-purveyor that would, but for the Handgun Ban and Defendants' enforcement thereof, make available for sale to all of its law-abiding customers all the commercially available handguns in common use for self-defense and other lawful purposes that are widely sold and possessed outside of Massachusetts but are banned under Defendants' Handgun Roster and Handgun Sales Regulations, and Plaintiff The Gunrunner, LLC would sell and transfer them to law-abiding customers, including, but not limited to, those off-Roster and unapproved handguns sought by Individual Plaintiffs, members and supporters of Institutional Plaintiff, and all similarly situated individuals. Plaintiff The Gunrunner, LLC brings this action on behalf of itself and all such would-be law-abiding purchasers, including Individual Plaintiffs, as well as on behalf of all similarly situated licensed retailers who are prevented from conducting such transactions.

52.     FPC brings this action on behalf of itself, its members, including the named Plaintiffs herein, supporters who possess all the indicia of membership, and similarly situated members of the public.

53.     FPC's members and supporters, and those similarly situated, have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

54.    FPC reasonably fears the prosecution of its members and supporters, and those similarly situated, by and through the credible threat of Defendants' ongoing enforcement of the laws, regulations, policies, practices, and customs challenged herein.

55.    FPC has expended and diverted resources because of Defendants' enforcement and resultant policies, practices, and customs challenged herein.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

56.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

57.    Defendants' laws, regulations, policies, practices, and customs establishing, implementing, and enforcing the Handgun Ban through their Handgun Roster and Handgun Sales regulations are unconstitutional under the Second Amendment because they ban the commercial sale and transfer of numerous handguns which are protected arms in common use and otherwise widely available for self-defense and other lawful purposes throughout the country, thereby leaving all ordinary law-abiding individuals with little to no other means of lawfully acquiring any of these protected arms in the exercise of their fundamental constitutional right to keep and bear arms for self-defense and other lawful purposes.

58.    Upon information and belief, Defendants are individually and collectively responsible for the formulation, issuance, and/or implementation of the laws, policies, practices, and customs underlying the Handgun Ban at issue in this case.

59.    Defendant Attorney General Healey has enforced and continues to enforce the Handgun Ban through the criminal and civil penalties established under the laws and regulations controlling the sales, transfer, possession, and ownership of firearms—specifically, M.G.L. c. 140

§ 123, cl. 18 – 21; M.G.L. c. 140 § 128; M.G.L. c. 140 § 131K; M.G.L. c. 140 § 131 ¾; 501 CMR 7.00 through 7.16; and 940 CMR 16.00 through 940 CMR 16.09—and the related policies, practices, and customs designed to implement and enforce the same, which collectively comprise the Handgun Ban and are challenged in this action as causing the injuries of concern.

60.     Defendant Turco, through his oversight of the Firearms Records Bureau within the Department of Criminal Justice Information Services, has enforced and continues to enforce the laws, regulations, and related policies, practices, and customs designed to implement and enforce the same.

61.     By Defendants' enforcement of the laws, regulations, policies, practices, and customs underlying the Handgun Ban, they have prevented and are continuing to prevent law-abiding individuals from purchasing, selling, transferring, and otherwise acquiring for self-defense and other lawful purposes handguns that are constitutionally protected arms categorically in common use for self-defense and other lawful purposes, in violation of Plaintiffs' and similarly situated persons' fundamental rights protected under the Second and Fourteenth Amendments to the United States Constitution.

62.     By preventing responsible, law-abiding individuals from purchasing, selling, transferring, and otherwise acquiring for self-defense and other lawful purposes constitutionally protected firearms, as they are entitled to do under the Constitution, Defendants have violated Plaintiffs' rights, and the rights of those similarly situated, under the Second and Fourteenth Amendments.

63.     Again, "[t]he very enumeration of the [Second Amendment] right takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

64.     The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. 742, 780, and it cannot "be singled out for special—and specially unfavorable—treatment," *id.* at 778–79.

65.     Massachusetts' claimed interests in public safety certainly cannot and do not take priority over the Constitution's textual enshrinement of a fundamental right that "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *Heller,* 554 U.S. 570 at 635, especially when the Commonwealth has not even considered or attempted to implement any less restrictive alternatives to its outright prohibition of these arms.

66.     States do not have the power to prohibit the purchase, possession, transfer, or other acquisition of handguns that Defendants' Handgun Ban prevents law-abiding people from purchasing, selling, transferring, and acquiring for self-defense and other lawful purposes.

67.     As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly situated Massachusetts residents and visitors who knowingly or unknowingly are subject to the Massachusetts statutes, regulations, policies, practices, and customs in question.

68.     Considerations of necessity, convenience, and justice justify relief to Individual, Retailer, and Institutional Plaintiff in a representative capacity.

69.     Defendants have enforced and will continue to enforce their unconstitutional laws, laws, policies, practices, and customs against Individual Plaintiffs, Retailer Plaintiff and its customers, Institutional Plaintiff's members and supporters, and similarly situated persons unless and until enjoined by this Court as Plaintiffs request herein.

70.    Plaintiffs and Plaintiffs' members, supporters, and customers reasonably fear that Defendants will enforce against them their laws and related enforcement policies, practices, and customs that implement and are designed to implement Massachusetts' Handgun Ban.

71.    Defendants' active enforcement of the Handgun Ban is evidenced by the prosecution of Massachusetts resident Michael A. Wheelock, who faced criminal charges stemming from the alleged sale of firearms not approved for sale in Massachusetts. (https://www.metrowestdailynews.com/article/20130404/NEWS/304049215)    (last    visited 5/6/2021).

72.    Defendants' laws, policies, practices, customs, and ongoing enforcement against Plaintiffs, Plaintiffs' members, supporters, and customers, and similarly situated members of the public, which prevent them from exercising their rights, including the purchase, sale, transfer, and other acquisition of constitutionally protected arms for self-defense and other lawful purposes, are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

73.    Plaintiffs thus seek declaratory and permanent injunctive relief.

## PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

1.    A declaratory judgment that the Commonwealth's laws, and Defendants' regulations, policies, practices, and customs underlying the Handgun Ban, and enforcement thereof, individually and collectively prohibit the purchase, sale, possession, transfer, and other acquisition for self-defense and other lawful purposes of constitutionally protected handguns in common use for self-defense and other lawful purposes, and thus violate the Second and Fourteenth Amendments;

2.     A permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who have notice of the injunction, from enforcing the Commonwealth's laws, and Defendants' regulations, policies, practices, and customs underlying the Handgun Ban, and enforcement thereof, that individually and collectively prohibit the purchase, sale, possession, transfer, and other acquisition for self-defense and other lawful purposes of constitutionally protected handguns in common use for self-defense and other lawful purposes;

3.     Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

4.     Attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law.

DATED: June 8, 2021

Respectfully submitted,
The Plaintiffs,

/s/ Richard C. Chambers, Jr., Esq.
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Richard@chamberslawoffice.com

Jason A. Guida (BBO# 667252)
PRINCIPE & STRASNICK, P.C.
17 Lark Avenue
Saugus, MA 01906
(617) 383-4652
jason@lawguida.com

23

Raymond DiGuiseppe
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com
*Pro Hac Vice Application Forthcoming*

William Sack
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
P: 916-596-3492
E: wsack@fpclaw.org
*Pro Hac Vice Application Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 8, 2021.

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.