# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEFANO GRANATA; JUDSON THOMAS; COLBY CANNIZZARO; CAMERON PROSPERI; THE GUN RUNNER, LLC; and FIREARMS POLICY COALITION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts; and THOMAS TURCO, in his official capacity as Secretary of Executive Office of Public Safety and Security of the Commonwealth of Massachusetts,<br><br>Defendants. | CIVIL ACTION<br>NO. 1:21-cv-10960-RWZ |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

### I.   The Handgun Safety Regulations Permit the Individual Plaintiffs to Acquire a Variety of Operable Handguns

At most, the handgun sales regulations[1] constitute only a *de minimis* burden on the ability of Massachusetts residents to acquire operable handguns. Currently, Massachusetts residents with a license to carry may purchase hundreds of different makes and models of handguns from retailers in Massachusetts, like Plaintiff The Gunrunner, LLC. *See Draper v. Healey*, 98 F. Supp. 3d 77, 84 (D. Mass. 2015), *aff'd on other grounds*, 827 F.3d 1 (1st Cir. 2016) (the Attorney General's load indicator or magazine safety disconnect requirement nonetheless "permits the purchase of a variety of handguns with appropriate safety devices"). What Plaintiffs cannot purchase are a subset of

---

[1] The statutory requirements for the commercial sale of handguns established by Mass. Gen. Laws ch. 140, § 123, and the Attorney General's handgun sales regulations codified at 940 Code Mass. Regs. ("CMR") §§ 16.00 *et seq.* (together, the "handgun sales regulations").

guns that do not satisfy the quality and safety requirements for inclusion on the Approved Firearms Roster or that do not include the additional safety features required by the Attorney General's regulations.

There is no authority for the proposition that the Second Amendment guarantees a right to purchase a specific handgun model when hundreds of other handgun models are available for sale. The cases on which Plaintiffs rely involved completely different regulations that precluded individuals from possessing or acquiring *any* firearms. In *District of Columbia v. Heller*, the Court invalidated Washington D.C.'s laws banning possession of any handgun in the home. 554 U.S. 570, 635 (2008). In *Ezell v. City of Chicago*, the U.S. Court of Appeals for the Seventh Circuit invalidated requirements in Chicago that dramatically limited the ability to site a publicly accessible shooting range in Chicago, so much so that no shooting range existed in the city, and where the city required training at a shooting range to purchase a firearm. 846 F.3d 888, 890 (7th Cir. 2017).[2] And in *Illinois Association of Firearms Retailers v. City of Chicago*, the U.S. District Court for the Northern District of Illinois invalidated a Chicago ordinance that barred the sale, acquisition, or transfer—including gifts—of any firearm in that city, except through inheritance. 961 F. Supp. 2d 928, 931 (N.D. Ill. 2014). Recognizing that the "acquisition right is far from absolute" because "there are many restrictions on the sales of arms (for example, licensing requirements for commercial sales)," the court nonetheless concluded that a complete ban on the transfer of firearms did not survive heightened, but "not quite strict" scrutiny. *Id.* at 930, 939, 946-47.

---

[2] And, unlike here, Chicago "raised only speculative claims of harm to public health and safety" to support the restriction. *Id.*

In Massachusetts there is simply no ban on the acquisition or possession of handguns. The individual Plaintiffs do not allege that they cannot buy an operational handgun in Massachusetts. And The Gunrunner does not allege that it cannot sell operational handguns to its properly licensed Massachusetts customers. While the Plaintiffs cannot buy specific models of handguns that lack safety features that prevent users from accidentally killing or injuring themselves or their family members, the Plaintiffs *can* buy hundreds of other handguns. *See* Approved Firearms Roster: 06/2021.[3] Thus, the handgun safety regulations are not remotely comparable to the restrictions struck down in *Heller*, *Ezell*, and *Illinois Association of Firearms Retailers*.

In the end, Plaintiffs' claim is that "they have a constitutional right to purchase a particular handgun." *Pena v. Lindley*, 898 F.3d 969, 973 (9th Cir. 2018). This is the precise claim rejected by the Ninth Circuit in *Pena*. Another version of this claim was likewise rejected in *Teixeira v. County of Alameda*, another case on which Plaintiffs rely. In *Teixeira*, would-be gun store owners brought a Second Amendment claim on behalf of their potential customers challenging the county's ordinance that, in effect, prohibited any new gun stores from opening, which, they claimed, impeded their potential customers' ability to acquire firearms. 873 F.3d 670, 676 (9th Cir. 2017) (en banc). Affirming the dismissal of their Second Amendment claim, the court explained that the plaintiffs "did not adequately allege . . . that Alameda County residents cannot purchase firearms within the County as a whole, or within the unincorporated areas of the County in particular." *Id.* at 678. Because there were ten existing gun stores in Alameda County, its "residents [could] freely purchase firearms within the County" and their access to guns was "not meaningfully constrained." *Id.* at 679-80. The constitutional challenge accordingly failed, because

---

[3] *See* https://www.mass.gov/doc/approved-firearms-roster-7/download.

"the Second Amendment does not elevate convenience and preference over all other considerations." *Id.* at 680.

So too here. Plaintiffs may freely purchase handguns within Massachusetts. Because their access to handguns is "not meaningfully constrained" by Massachusetts law and Plaintiffs do not have a right to purchase a particular subset of defective or unsafe handgun makes and models, Plaintiffs' Second Amendment claim fails. *See id.* at 680.

## II.     Massachusetts' Handgun Safety Regulations Prevent Deaths and Injuries

The GAO Report,[4] among other things, amply establishes the "reasonable fit" between the Commonwealth's public safety objectives and the Attorney General's load indicator or magazine safety disconnect and childproofing requirements. *Gould v. Morgan*, 907 F.3d 659, 674 (1st Cir. 2018). Plaintiffs concede that the government has an important interest in promoting public safety and preventing accidental firearm injuries, but contend they have sufficiently alleged in their Complaint that the handgun safety regulations do not substantially further this important government interest. Opp'n at 15. They only address the evidence supporting the requirements that: (1) handguns that have a mechanism to load cartridges via a magazine must include either a load indicator or a magazine safety disconnect, 940 CMR § 16.05(3); and (2) handguns must contain a mechanism that precludes an average five-year-old child from operating the handgun when it is ready to fire, 940 CMR § 16.05(2).

Plaintiffs argue that the load indicator and childproofing requirements do not satisfy intermediate scrutiny because the GAO Report concluded that a load indicator would only prevent twenty-three percent of accidental deaths. GAO Report at 2-3. In effect, Plaintiffs argue that these

---

[4] U.S. General Accounting Office, Report to the Chairman, Subcommittee on Antitrust Monopolies, and Business Rights, Committee on the Judiciary, U.S. Senate, Accidental Shootings, MANY DEATHS AND INJURIES CAUSED BY FIREARMS COULD BE PREVENTED 3 (1991) ("GAO Report"). *See* http://www.gao.gov/assets/160/150353.pdf

4

safety measures cannot survive heightened scrutiny because they only prevent *some* deaths. That premise is contrary to every decision upholding firearms safety laws under heightened constitutional scrutiny. The Commonwealth's ban on assault weapons and large-capacity magazines, for example, satisfied intermediate scrutiny because it outlawed weapons that are commonly used in mass shootings and that exacerbate the likelihood of death, and the severity of injury, in the event of such shootings. *See Worman v. Healey*, 922 F.3d 26, 39-40 (1st Cir. 2019). The First Circuit did not require the Commonwealth to demonstrate that the statute would prevent *all* mass shootings or *all* deaths and injuries attributable to the proscribed weapons. *See id; see also Gould*, 907 F.3d at 674-75 (Commonwealth's requirements for obtaining a license to carry a firearm outside the home satisfied intermediate scrutiny because states with more restrictive firearm licensing regimes have lower rates of gun-related homicides and other violent crimes).

And the public safety benefits identified in the GAO Report are compelling. The GAO Report concluded that in 1988 alone, out of the 1,501 accidental firearm deaths, *458 deaths* could have been prevented by a load indicator or a childproofing device. GAO Report at 4. This includes *all* gun accidents in which children under six killed themselves or others. GAO Report at 3, 34. Moreover, the GAO Report estimated that there are approximately 157,600 non-fatal accidental firearm injuries per year, some portion of which also could be prevented by a load indicator or childproofing. GAO Report at 4, 30. Based on this substantial evidence, the Attorney General reasonably concluded that these two safety features would prevent the "considerable" "human, economic, and public health costs of these [accidental] shootings to the victims, their families and society." GAO Report at 5.

Plaintiffs' attempts to undercut the persuasiveness of the GAO Report are contradicted by the GAO Report itself. Plaintiffs contend that the GAO Report does not *prove* that a load indicator would have prevented a portion of the accidental deaths. Opp'n at 15. Yet the GAO Report explains

5

that it relied on actual evidence in the case file to arrive at its conclusion that the fatality occurred because the gun user did not know the gun was loaded. GAO Report at 16. Plaintiffs also argue that the GAO Report merely assumed that childproofing would prevent all of the accidental deaths caused by children. Opp'n at 18. But the GAO Report again explains that this starting premise was based on the advice of pediatrics experts and experts on deaths and firearm injuries. GAO Report at 15-16. (Not to mention common sense; if a child cannot operate a handgun, the child cannot shoot herself or another person.) And, if a gun manufacturer concludes that a 10-pound trigger pull will prevent a child from operating the firearm but will also make it more challenging for adults to fire the gun, the Attorney General's regulations expressly permit the manufacturer to equip its gun with an alternative safety feature. *See* 940 CMR § 16.05(2). In sum, the Attorney General's safety requirements are substantially, and directly, related to preventing deaths caused by accidental gunshots and easily survive intermediate scrutiny.[5]

Plaintiffs contend that Massachusetts could adequately address its interest in public safety solely through "education, training, and public outreach regarding basic rules of firearm safety, storage, and use." *See* Opp'n 20; Compl. ¶ 42. But the First Circuit has made clear that intermediate scrutiny does not require a narrow tailoring analysis or consideration of less restrictive alternatives in the Second Amendment context. *See Gould*, 907 F.3d at 674 (in the intermediate scrutiny analysis, "a legislature's chosen means need not be narrowly tailored to achieve its ends"). Ultimately, the GAO Report provides substantial evidence that a load indicator and childproofing features will save lives, and the Legislature and the Attorney General reasonably decided to require these safety features to protect gun owners and the public. This is more than adequate to satisfy

---

[5] Although the Plaintiffs do not argue this point, the GAO Report also concluded that almost half of all accidental firearm deaths occurred because the firearm discharged when it fell or was knocked to the ground. GAO Report at 18. These accidental deaths are directly addressed by Mass. Gen. Laws ch. 140, § 123, cl. 19, and 940 CMR § 16.04(2), which require that handguns sold in commerce in Massachusetts must pass an accidental drop test.

6

intermediate scrutiny. *See Worman*, 922 F.3d at 40 ("[t]he role of a reviewing court is limited to ensure that in formulating its judgments" the Attorney General "has drawn reasonable inferences based on substantial evidence").

Finally, Plaintiffs argue that Massachusetts' Approved Firearms Roster is an outlier and that it must be unnecessary and ineffective because only a small number of other states have imposed similar requirements. Opp'n at 16, 18. Whether other states have imposed a particular product safety requirement is not germane to whether it satisfies intermediate scrutiny. Indeed, Massachusetts *is* an outlier in the number of gun deaths in the state. Because of Massachusetts' laws regulating guns, "Massachusetts consistently has one of the lowest rates of gun-related deaths in the nation." *Gould*, 907 F.3d at 674-75; *see also* Centers for Disease Control and Prevention, National Center for Health Statistics, Firearm Mortality by State[6] (showing Massachusetts had lowest gun death rate in the nation in 2019). This statistic demonstrates that Massachusetts' firearm safety measures effectively reduce firearm fatalities, while still allowing Massachusetts citizens to exercise their Second Amendment rights. Because Plaintiffs have failed to state a claim that the handgun safety regulations infringe their Second Amendment rights, the Court should dismiss their Complaint with prejudice.

---

[6] https://www.cdc.gov/nchs/pressroom/sosmap/firearm_mortality/firearm.htm

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MAURA HEALEY, ATTORNEY GENERAL, and SECRETARY THOMAS TURCO, |
|  | By their attorneys, |
|  | */s/ Phoebe Fischer-Groban*<br>Phoebe Fischer-Groban, BBO No. 687068<br>Grace Gohlke, BBO No. 704218<br>Assistant Attorneys General<br>Office of the Attorney General<br>Government Bureau<br>One Ashburton Place, 20th Floor<br>Boston, MA 02108<br>(617) 963-2589 |
| Dated: October 8, 2021 | Phoebe.Fischer-Groban@mass.gov<br>Grace.Gohlke@mass.gov |

## **CERTIFICATE OF SERVICE**

I certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 8, 2021.

*/s/ Phoebe Fischer-Groban*
Phoebe Fischer-Groban
Assistant Attorney General
