## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **STEFANO GRANATA;** | : | |
| **JUDSON THOMAS;** | : | **FIRST AMENDED** |
| **COLBY CANNIZZARO;** | : | **COMPLAINT** |
| **CAMERON PROSPERI;** | : | 42 U.S.C. § 1983 |
| **THE GUN RUNNER, LLC;** and | : | |
| **FIREARMS POLICY** | : | |
| **COALITION, INC.,** | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs | : | 1:21-CV-10960-RWZ |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREA JOY CAMPBELL,** in her | : | |
| Official capacity as Attorney General of the | : | |
| Commonwealth of Massachusetts; and | : | |
| **TERRENCE M. REIDY,** in his official | : | |
| capacity as Secretary of the Executive | : | |
| Office of Public Safety and Security of the | : | |
| Commonwealth of Massachusetts, | : | |
| | : | |
| Defendants.[1] | : | |
| | : | |

Come now Plaintiffs Stefano Granata, Judson Thomas, Colby Cannizzaro, and Cameron Prosperi ("Individual Plaintiffs"), The Gunrunner, LLC ("Retailer Plaintiff"), and Firearms Policy Coalition, Inc., ("Institutional Plaintiff") (collectively "Plaintiffs"), and allege against the Defendants named herein as follows:[2]

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Andrea Joy Campbell is hereby substituted for Maura Healey, former Attorney General, and Terrence M. Reidy is hereby substituted for Thomas Turco, former Secretary of the Executive Office of Public Safety and Security of the Commonwealth of Massachusetts.

[2]    The Attorney General, as counsel for the Defendants, has consented in writing to the filing of this First Amended Complaint, and therefore it is authorized under Fed. R. Civ. P. 15(a)(2) as being filed "with the opposing party's written consent."

**INTRODUCTION**

1.     The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. The Second Amendment is incorporated against the Commonwealth of Massachusetts and is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring).

2.     The Second Amendment's "reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.' " *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. And "[w]hatever the likelihood that handguns were considered 'dangerous and unusual' during the colonial period, they are indisputably in 'common' use for self-defense today. They are, in fact, 'the quintessential self-defense weapon.'" *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 629 (cleaned up)).

3.     "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2143 (citing *Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016) (*per curiam*), concerning stun guns). Moreover, "[s]emiautomatic weapons," such as those proscribed under Massachusetts' Handgun Ban (as defined herein), [3] "traditionally have been widely accepted as lawful possessions." *Staples v. United States*, 511 U.S. 600, 612 (1994).

---

[3]     The Commonwealth's laws and regulations underlying the challenged regulatory scheme consist of the following, collectively referred to as the "Handgun Ban": (i) sections 123, clauses 18 to 21, 128, 13lK, 131¾ of chapter 140 of the Massachusetts General Laws ("M.G.L."); (ii) sections 7.01, 7.02, 7.03, 7.04, 7.05, 7.06, 7.07, and 7.16 of Title 501 of the Code of Massachusetts Regulations ("CMR"); (iii)

4.     But under the Handgun Ban, the Commonwealth of Massachusetts unconstitutionally bans the commercial sale and transfer of a broad swath of handguns in common use for lawful purposes protected under the Second and Fourteenth Amendments to the United States Constitution.

5.     As the Supreme Court clarified in June 2022, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Ultimately, "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

6.     Here, the plain text of the Second Amendment covers the conduct that Plaintiffs wish to engage in (i.e., "keep and bear arms"), just as it covers the arms they wish to keep and bear. *Id.* at 2132 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms"). Indeed, "Plaintiffs' desire to commercially purchase newer models of semiautomatic handguns in common use is covered by the Second Amendment and presumptively protected." *Renna v. Bonta*, No. 20-CV-2190-DMS-DEB, 2023 WL 2846937, at *2 (S.D. Cal. Apr. 3, 2023) (addressing a challenge to a similar regulatory scheme in California).

7.     *Heller* has already established the relevant contours of the historical tradition: bearable arms presumptively protected by the Second Amendment cannot be banned unless they are both dangerous *and* unusual. *Heller*, 554 at 627. The arms that Plaintiffs wish to acquire are in common use for lawful purposes today and thus cannot be dangerous *and* unusual. No history, analogous or otherwise, supports the

---

sections 16.01, 16.02, 16.03, 16.04, 16.05, 16.06, 16.07, 16.08, and 16.09 of Title 501 of the CMR; and (iv) the related Enforcement Notices and other policies, practices, and customs.

Commonwealth's ban. Thus, Massachusetts cannot possibly meet its burden here.

8.     Under the Supreme Court's analysis, Defendants' Handgun Ban violates the Second and Fourteenth Amendments to the United States Constitution. The analysis is straightforward: (a) Plaintiffs are not prohibited from exercising their right to keep and bear arms; (b) because Plaintiffs' proposed conduct is covered by the Second Amendment's plain text, the government must justify the Handgun Ban as being consistent with this Nation's tradition of firearm regulation; and (c), as *Heller* and *Bruen* establish, there is no historical basis for banning arms in common use for lawful purposes. Therefore, the Handgun Ban must be declared unconstitutional and enjoined.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

10.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts, of the rights, privileges, or immunities secured by the United States Constitution.

11.     Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in the District where the action is being brought.

12.     The Eastern Division of this Court is appropriate pursuant to Local Rule 40.l(d)(l)(C) because all parties residing in the District reside in the Eastern Division.

## PARTIES

### *Plaintiff Granata*

13.     Plaintiff Stefano Granata is a natural person residing in North Reading, Middlesex County, Massachusetts.

14.     Plaintiff Granata currently holds a valid License to Carry ("LTC") in the Commonwealth.

15.    Plaintiff Granata is not prohibited from purchasing or possessing firearms under state and federal law.

16.    Plaintiff Granata desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants.

17.    But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Granata would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the handguns which are prohibited from commercial sale by the Handgun Ban, including but not limited to: a fifth-generation Glock 19, a Sig Sauer Model 1911 "We the People" edition, and/or a Sig Sauer Model 1911 "TacOps" edition.

18.    Semiautomatic handguns such as those that Plaintiff Granata would otherwise purchase are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned.

19.    Plaintiff Granata is a member of Institutional Plaintiff Firearms Policy Coalition.

***Plaintiff Thomas***

20.    Plaintiff Judson Thomas is a natural person residing in Nantucket, Nantucket County, Massachusetts.

21.    Plaintiff Thomas holds a valid LTC in the Commonwealth.

22.    Plaintiff Thomas is not prohibited from purchasing or possessing firearms under state and federal law.

23.    Plaintiff Thomas desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants.

24.    But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Thomas would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the handguns which are prohibited from commercial sale by the Handgun Ban, including but not limited to: a fifth generation Glock 19

and/or 17, CZ-USA DW Kodiak 10mm, CZ- USA 75 Compact 9mm, CZ-USA P-10 9mm, Magnum Research Desert Eagle XIX .50AE, Kimber Ultra carry II .45, Kimber KHX custom .45, Kimber Desert Warrior .45, and/or a Nighthawk Custom Heinie Signature Recon.

25.     Semiautomatic handguns such as those that Plaintiff Thomas would otherwise purchase are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned.

26.     Plaintiff Thomas is a member of Institutional Plaintiff Firearms Policy Coalition.

### *Plaintiff Cannizzaro*

27.     Plaintiff Colby Cannizzaro is a natural person residing in Granville, Hampden County, Massachusetts.

28.     Plaintiff Cannizzaro holds a valid LTC in the Commonwealth.

29.     Plaintiff Cannizzaro is not prohibited from purchasing or possessing firearms under state and federal law.

30.     Plaintiff Cannizzaro has honorably served six years in the Air Force reserves, he has served as a law enforcement officer for four years, and he has completed numerous hours of law enforcement firearms training.

31.     Plaintiff Cannizzaro desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants.

32.     But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Cannizzaro would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the handguns which are prohibited from commercial sale by the Handgun Ban, including but not limited to: a Kimber Ultra Carry 2 1911, CZ P-09, and/or a Sig Sauer P365XL.

33.     Semiautomatic handguns such as those that Plaintiff Cannizzaro would otherwise purchase are in common use for self-defense and other lawful purposes, are

widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned.

34.     Plaintiff Cannizzaro is a member of Institutional Plaintiff Firearms Policy Coalition.

***Plaintiff Prosperi***

35.     Plaintiff Cameron Prosperi is a natural person residing in Three Rivers, Hampden County, Massachusetts.

36.     Plaintiff Prosperi holds a valid LTC in the Commonwealth.

37.     Plaintiff Prosperi is not prohibited from purchasing or possessing firearms under state and federal law.

38.     Plaintiff Prosperi desires to purchase one or more handguns that are unlawful for sale and transfer to him under the Handgun Ban being enforced by Defendants.

39.     But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff Prosperi would purchase new from a licensed retailer, for self-defense and other lawful purposes, one or more of the handguns which are prohibited from commercial sale by the Handgun Ban, including but not limited to: a CZ Tactical Sport, CZ Tactical Sport Orange, Beretta 92X Performance, and/or a CZ P- l OF.

40.     Semiautomatic handguns such as those that Plaintiff Prosperi would otherwise purchase are in common use for self-defense and other lawful purposes, are widely sold and possessed outside of Massachusetts, and are thus constitutionally protected arms under the Second Amendment that cannot be banned.

41.     Plaintiff Prosperi is a member of Institutional Plaintiff Firearms Policy Coalition.

***Plaintiff The Gunrunner***

42.     Plaintiff The Gunrunner, LLC ("The Gunrunner") is a limited liability company organized under Massachusetts law with its office in Middleborough, Plymouth County, Massachusetts.

43.     Plaintiff The Gunrunner is a firearms retailer licensed to sell and transfer firearms under federal law and the law of the Commonwealth.

44.     Plaintiff The Gunrunner is licensed to and does sell new handguns to law-abiding members of the public.

45.     But for the Handgun Ban and Defendants' enforcement thereof, Plaintiff The Gunrunner would make available for sale to all of its law-abiding customers all the commercially available handguns in common use for self-defense and other lawful purposes and sell and transfer them to law-abiding customers, including, but not limited to, those handguns sought by Individual Plaintiffs.

46.     Plaintiff The Gunrunner brings this action on behalf of its customers and would-be customers of handguns not available for sale under the Handgun Ban, including the Individual Plaintiffs. *See, e.g., Craig v. Boren*, 429 U.S. 190, 192–97 (1976).

47.     Plaintiff The Gunrunner is a member of Institutional Plaintiff Firearms Policy Coalition.

### Plaintiff Firearms Policy Coalition

48.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada.

49.     The nature of the purposes of FPC is to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms.

50.     Plaintiff FPC specifically seeks to: protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms; protect, defend, and advance the means and methods by which individuals may exercise their rights, including but not limited to the acquisition, collection, transportation, exhibition, carry, care, use, and disposition of arms; foster and promote the shooting sports and all lawful uses of arms; and foster and promote awareness of, and public engagement in, all of the above.

51.     FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

52.     Plaintiff FPC has members in the Commonwealth of Massachusetts, including Plaintiffs Granata, Thomas, Cannizzaro, Prosperi, and The Gunrunner.

53.     FPC brings this action on behalf its members, including the named Plaintiffs herein.

54.     FPC's members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

55.     Plaintiff FPC's members would otherwise have standing to sue in their own right, as established herein.

56.     The interests that Plaintiff FPC seeks to protect are germane to the organization's purpose.

57.     Neither the claims that Plaintiff FPC asserts nor the relief it requests requires the participation of individual members in the lawsuit. *See, e.g., Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U. S. ____ (2023), slip op. 7–9.

### Defendant Andrea Joy Campbell

58.     Defendant Andrea Joy Campbell ("Defendant Campbell") is sued in her official capacity as Attorney General of the Commonwealth of Massachusetts.

59.     Defendant Campbell is an independent constitutional officer responsible for regulating, implementing, and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms.

60.     Defendant Campbell is therefore responsible for regulating, implementing, and enforcing the Commonwealth's laws and regulations which collectively comprise the Handgun Ban of which Plaintiffs complain herein.

61.     Defendant Campbell has enforced, is presently enforcing, and is threatening to enforce the Handgun Ban.

62.     Defendant Campbell has authority to cease such enforcement of the Handgun Ban consistent with the relief Plaintiffs seek through this action. *See* M.G.L. c. 12 § 1 and § 3.

*Defendant Terrence M. Reidy*

63. Defendant Terrence M. Reidy ("Defendant Reidy") is sued in his official capacity as Secretary of the Commonwealth's Executive Office of Public Safety and Security (EOPSS), *see* https://bit.ly/3ppS94N.

64. Defendant Reidy is an independent constitutional office within the Executive branch, *see* https://bit.ly/3NXjtR1; https://bit.ly/44tCfF7.

65. Defendant Reidy is responsible for overseeing the Firearms Records Bureau (FRB) through his Department of Criminal Justice Information Services (DCJIS).

66. Defendant Reidy is thus responsible for regulating and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms which collectively comprise the Handgun Ban of which Plaintiffs complain herein.

67. Defendant Reidy has enforced, is presently enforcing, and is threatening to continue to enforce the Handgun Ban.

68. Defendant Reidy has authority to cease such enforcement of the Handgun Ban consistent with the relief Plaintiffs seek through this action. *See* M.G.L. c. 6A § 2 and § 3.

## THE REGULATORY SCHEME AND HANDGUN BAN

69. In Massachusetts, the sale, transfer, rental, and lease of all "firearms" is strictly regulated. A "firearm" includes any pistol, revolver, or "other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches," i.e., all handguns. M.G.L. c. 140, § 121.

70. It is generally unlawful for anyone except "licensed dealers" to "own or possess" a firearm without first applying for and being granted a Firearms Identification card ("FID") or an LTC. *See* M.G.L. c. 140, §§ 128, 129B-129C; *id.* c. 269, § 10(a). And it is generally unlawful for anyone to sell, rent, lease, or otherwise transfer any handgun without first applying for and obtaining a license to engage in the commercial transaction of firearms under the provisions of M.G.L. c. 140, § 122.

71.     Even with such a license, the ability to actually engage in firearms transactions is strictly limited, as licensees are prohibited on pain of criminal and civil penalties from delivering, selling, renting, leasing, or otherwise transferring any firearm to anyone who does not have both a valid permit to purchase a firearm issued pursuant to M.G.L. c. 140, § 131A, and an FID, unless the transferee happens to hold a LTC or meet one of the narrow set of special exemptions to these restrictions generally unavailable to ordinary law-abiding citizens. M.G.L. c. 140, §§ 123, cl. 7-8, 131E(b).

72.     On top of that, it is generally illegal for a licensee (and any other person or entity involved in the chain of commercial supply or distribution of firearms) to sell, rent, lease, transfer, or deliver any firearm that does not meet the specifications established from time to time by the Commonwealth's "gun control advisory board" as being necessary for inclusion on the Massachusetts "Approved Firearms Roster" ("Handgun Roster"). M.G.L. c. 140, §§ 123, cl. 18-21, 131 ¾; 501 CMR 7.02 - 7.07.[4] *See* https://bit.ly/43blrla (last visited September 21, 2023).

73.     Only firearms lawfully owned or possessed under a license issued before October 21, 1998, are exempt from complying with the requirements for inclusion on the Handgun Roster. M.G.L. c. 140, § 123.

74.     Licensees are further constrained in their ability to engage in the sale and transfer of firearms by the "Attorney General's Handgun Sales Regulations," i.e., 940 CMR 16.00, et seq., and the "Enforcement Notices" based on the same.

75.     As the disclaimer on the Handgun Roster itself declares:

> Massachusetts licensed firearms dealers should note that the transfers of handguns are also subject to the Attorney General's Handgun Sales Regulations, 940 CMR 16.00, et seq. Firearms on this Approved Firearms Roster do not necessarily comply with the requirements of the Attorney

---

[4]     The statutory provisions and regulations underlying the Handgun Roster fall within the statutory provisions and regulations being challenged in this action and thus fall within the "Handgun Ban" as defined herein. *See infra*, n. 3 (defining "Handgun Ban"). Accordingly, references to the Handgun Ban generally include the Handgun Roster unless the context specifically indicates otherwise.

General's Handgun Sales Regulations. Information about those regulations, as well as the Enforcement Notice may be obtained from the Office of the Attorney General and may be accessed on the website of the Attorney General (www.ago.state.ma.us).

76.     Enforcement Notice #3, from February 2002, still featured on the Attorney General's website, further declares that the legality of a licensee's transfer of a firearm is contingent on the firearm's having the child safety features and tamper resistant serial numbers specified in 940 CMR 16.03 and 16.05, and, when it is a semiautomatic handgun, the load indicators and magazine safety disconnects specified in 940 CMR 16.05. The notice warns that "[i]f a handgun does not satisfy these three additional requirements, then it is a violation of the regulations for a handgun purveyor to transfer that handgun even if the handgun is listed on the Approved Firearms Roster." *See* https://bit.ly/46KlfN0 (last visited September 21, 2023).

77.     A copy of the Attorney General Enforcement Notices, as well as a copy of the July 16, 2004, Consumer Advisory on Glock Handguns, are attached to this First Amended Complaint as **Exhibit A**.

78.     A licensee's violation of the restrictions imposed by this regulatory scheme is not only a crime, M.G.L. c. 140, § 128, but also constitutes an unfair and deceptive trade practice subjecting the violator to significant civil penalties, 940 CMR 16.01–16.06.

79.     The sale, rental, lease, or other transfer of firearms by or to non-licensed individuals is subject to even greater restrictions. The general prohibition against the sale, rental, lease, or other transfer of firearms continues to apply, subjecting the transferor to the criminal penalties established under M.G.L. c. 140, § 128, unless the transaction fits within one of the following narrow exceptions for lawful transfers:

a.     The transfer is to a dealer licensed under state or federal law;

b.     The transfer is to a historical society, museum, or institutional collection open to the public; or

12

     c.    The transfer is to someone other than a licensed dealer, a historical society, museum, or institutional collection open to the public, and all of the following are true:

     i.    The transferor has a valid FID or LTC or is exempt from such requirements under M.G.L. c. 140, § 129C(4)(n), (o), (r), or (s) (which apply to transfers involving legatees, military or law enforcement officers, chartered veteran's organizations, or historical societies, museums, or institutional collections open to the public);

     ii.    The transferee has (i) a purchase permit *and* an FID, (ii) a purchase permit and is exempt from the FID requirement, or (iii) an LTC;

     iii.    The transferor makes no more than four such transfers of firearms, including rifles and shotguns, in any one calendar year; and

     iv.    The transferee reports the transfer to the Commonwealth department of justice within seven days of the firearm's receipt, which report must specifically identify both the transferor and the firearm.

M.G.L. c. 140, §§ 128A, 128B, 131E.

80.    Consequently, licensed retailers are absolutely precluded from transferring any handgun *not* included on the Handgun Roster *and* any handgun prohibited from transfer to typical law-abiding individuals by the Defendants.

81.    All unlicensed individuals are precluded from transferring any handguns to any ordinary, law-abiding citizens who lack the necessary purchase permits, FID, or special exemptions, and even then, they are limited to four transfers in any one year.

82.    Obtaining a purchase permit, FID, or LTC for purposes of acquiring a handgun requires meeting specific statutory criteria based on the applicant's age, personal background, and satisfaction of mandated firearms training, and, even then, the granting of these statutory creatures is discretionary.

83.   Purchase permits are subject to the licensing official's subjective determination that the purchase, rental, or lease of the firearms "is for a proper purpose," and the official "may revoke such permit at will." M.G.L. c. 140, § 131A.

84.   Licensing officials may deny FIDs or LTCs based on their subjective determination that the applicant "could potentially create a risk to public safety" and is therefore "unsuitable." M.G.L. c. 140, §§ 129B, 129B(1½), 13lA, 13l(d)(i)–(x).

85.   Indeed, because licensed retailers are prohibited from transferring any off-Roster or otherwise unapproved or prohibited handguns, all ordinary law-abiding citizens—even those with purchase permits, FIDs, and LTCs—are relegated to a secondary market of non-licensed transferors who may transfer no more than four firearms, including shotguns and rifles, in an entire year, and thus who necessarily deal in limited supplies.

86.   The handguns approved for commercial sale to ordinary law-abiding citizens in the Commonwealth represent a fraction of the total number makes and models of commercially available constitutionally protected handguns available in the United States that are in common use for self-defense and other lawful purposes.

87.   Ordinary law-abiding Massachusetts residents cannot simply look outside the Commonwealth borders to purchase or acquire any of the banned handguns because federal law requires the use of an in-state licensed dealer to facilitate any purchase or delivery of a handgun from an out-of-state seller, 18 U.S.C. §§ 922(a)(3), 922(a)(5). And, of course, the in-state dealer must fully comply with Massachusetts law which precludes transferring handguns proscribed under the Handgun Ban.

88.   By banning the commercial sale of constitutionally protected handguns, Defendants' Handgun Ban is a bar to the exercise of the natural, inalienable, and fundamental right to keep and bear such protected arms.

89.   Defendants' Handgun Ban represents a policy choice that "the enshrinement of constitutional rights" has taken "off the table." *Heller,* 554 U.S. at 636.

90.   In fact, the "features" that the Commonwealth mandates for inclusion on its Handgun Roster are not present on many of the handguns otherwise in common use and widely available around the country for lawful purposes.

91.   The features that the Commonwealth mandates for inclusion on its Handgun Roster but which are not present on many of the handguns otherwise in common use around the country for lawful purposes include, for example, loaded chamber indicators, "childproofing protection" features, and/or magazine safety disconnect mechanisms.[5]

92.   Additionally, on information and belief, handguns that have not passed the Commonwealth's "Handgun Drop Test" are in common use and widely available around the country for lawful purposes.

93.   Therefore, the Handgun Ban excludes and outlaws the commercial sale of many firearms that are constitutionally protected.

94.   The Commonwealth's blanket prohibitions against this class of protected arms are categorically unconstitutional, which has been clear since the time of *Heller*; that was the essence of the ban the Supreme Court struck down as categorically unconstitutional in *Heller* itself. *Heller,* 554 U.S. at 628 (striking down a handgun ban where it "amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for self-defense purposes).

95.   *Bruen* seals the fate of the Handgun Ban by reaffirming *Heller* that "demands a test rooted in the Second Amendment's text, as informed by history," 142 S. Ct. at 2127, a test that Massachusetts cannot satisfy since it cannot show the Ban "is consistent with this Nation's tradition of firearm regulation," *id.* at 2126.

---

[5]   Some of Massachusetts' "safety" requirements, like the mandated 10-lb. trigger pull (nearly double the weight of many widely used law enforcement-issued duty handguns, *see*, *e.g.*, https://bit.ly/44vORfc) actually make handguns *more* difficult to operate effectively—and thus more difficult to operate safely.

**COUNT I**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV**
**42 U.S.C. § 1983**

96.     Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

97.     There is an actual and present controversy between the parties.

98.     The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II.

99.     Individual Plaintiffs, Institutional Plaintiff FPC's similarly situated members, and Retail Plaintiff The Gunrunners' customers and would-be customers— all legally eligible to exercise their Second Amendment protected rights—wish to keep and bear constitutionally protected arms for self-defense and other lawful purposes.

100.    Because of Defendants' enforcement of the Handgun Ban, however, these individuals cannot purchase, and Plaintiff The Gunrunner is prohibited from selling to them, new constitutionally protected arms without suffering various penalties, including but not limited to criminal liability.

101.    Defendant Campbell has enforced, is presently enforcing, and is threatening to continue to enforce the Handgun Ban, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, the similarly situated customers and would-be customers of Retailer Plaintiff The Gunrunner, and the similarly situated Massachusetts-resident members of Institutional Plaintiff FPC to the threat of criminal sanction for any act or attempted act in violation of the Handgun Ban.

102.    Defendant Reidy has enforced, is presently enforcing, and is threatening to enforce the Handgun Ban, and in doing so is actively subjecting and will continue to subject Individual Plaintiffs, the similarly situated customers and would-be customers of Retailer Plaintiff The Gunrunner, and the similarly situated Massachusetts-resident members of Institutional Plaintiff FPC to the threat of criminal sanction for any act or attempted act in violation of the Handgun Ban.

103.    The laws and regulations underlying the Handgun Ban, and the policies, practices, and customs designed to enforce the same, prevent the Individual Plaintiffs, the FPC's similarly situated members, and The Gunrunners' customers and would-be customers from purchasing, acquiring, receiving, and ultimately possessing "instruments that constitute bearable arms."

104.    Individuals in Massachusetts have a right to keep and bear arms, including but not limited to, buying, selling, transferring, self-manufacturing or assembling, transporting, carrying, and practicing safety and proficiency with, firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

105.    This inalienable, fundamental, individual right to keep and bear firearms includes the right to acquire modern handguns in common use for lawful purposes—indeed, arms that are lawfully sold and possessed throughout the United States—such as those the Handgun Ban and Handgun Roster prevent common law-abiding citizens from purchasing at a licensed retailer.

106.    The text of the Second Amendment, which guarantees "the right of the people to keep and bear Arms," implicitly includes the right to acquire firearms. *See Andrews v. State*, 50 Tenn. 165, 178 (1871) ("[The] right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms."); *accord Teixeira v. County of Alameda*, 873 F.3d 670, 678 (2017).

107.    Without constitutional protections for the acquisition of firearms, the "right of the people to keep and bear Arms" would be in jeopardy. *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (clarifying that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective"); *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930, 938 (N.D. Ill. 2014) (holding that "the right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm . . .").

17

108.    Contrary to the regulations like those underlying the Handgun Ban and related Handgun Roster, no Founding Era precedent exists for prohibiting the commercial sale of firearms otherwise widely available to, and in common use for lawful purposes among, ordinary law-abiding citizens in the vast majority of States.

109.    Purchase prohibitions like those imposed by the Commonwealth only exist in a handful of jurisdictions and all of them are of recent origin—on information and belief, the *earliest* was Maryland's, enacted in 1988. Md. Code Ann., Pub. Safety § 5-405.

110.    The Handgun Ban prevents law-abiding citizens from acquiring and thus possessing for lawful purposes "instruments that constitute bearable arms" protected under the Second Amendment.

111.    The Handgun Ban is plainly inconsistent with the "Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130. Accordingly, these restrictions on the purchase and acquisition of firearms fall directly within—and are proscribed by—the Second Amendment's "unqualified command." *Id.* at 2130 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50, n.10 (1961)).

112.    The Commonwealth's prohibition on the purchase of constitutionally protected arms under the Handgun Ban and its maintenance of the Handgun Roster for purposes of enforcing this proscription in the absence of the necessary historical precedent fails constitutional scrutiny under *Bruen*, rendering them unconstitutional both facially and as applied in this case.

113.    "The very enumeration of the [Second Amendment] right takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

114.    The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. 742, 780, and it cannot "be singled out for special—and especially unfavorable—treatment." *Id.* at 778–79.

18

115.   *Bruen* made this clear by expressly rejecting all interest balancing and the First Circuit's prior "two-step" approach in the context of Second Amendment claims. 142 S. Ct. at 2127.

116.   "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S. Ct. at 2127. Again, "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Id*.

117.   *Bruen* makes clear that the First Circuit's former two-step approach and interest-balancing applied in *Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019), are inapplicable and improper in Second Amendment cases, and thus the analysis and conclusions of *Worman* are abrogated.

118.   "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. at 2131. And "*Heller*'s methodology centered on constitutional text and history." *Id*. at 2128-29.

119.   The plain text of the Second Amendment covers the conduct the Plaintiffs wish to engage in ("keep and bear arms") and the arms they wish to keep and bear (handguns).

120.   "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U. S. at 582).

121.   Since the conduct is covered by the Second Amendment's plain text, "the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

122.   As *Heller* already established, bearable arms that are presumptively protected by the Second Amendment cannot be banned unless they are both dangerous *and* unusual, and "[w]hatever the likelihood that handguns were considered dangerous and unusual during the colonial period, they are indisputably

in common use for self-defense. They are, in fact, the quintessential self-defense weapon." *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U. S. at 629) (cleaned up).

123.   The general definition of "arms" under the Second Amendment "covers modern instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016) (*per curiam*) (stun guns)." *Id.*

124.   Millions of handguns prohibited for sale to the Commonwealth's law-abiding citizens under the Handgun Ban and Defendants' enforcement thereof are commonly possessed and used for self-defense and other lawful purposes in the vast majority of states.

125.   In the approximately 400-year history of the colonies and later the United States, no regulations at all like the Handgun Ban appeared until recently and then in only a few states. That is hardly a historical tradition of such regulations.

126.   Defendants' enforcement of the Handgun Ban has prevented and continues to prevent Individual Plaintiffs, Retailer Plaintiff's customers and would-be customers, and similarly situated members of Institutional Plaintiff FPC from purchasing new, constitutionally protected handguns from licensed firearm dealers, in violation of their rights protected under the Second and Fourteenth Amendments to the United States Constitution.

127.   Plaintiffs reasonably fear that Defendants will enforce the Handgun Ban against them should they act or attempt to act in violation of the same.

128.   Defendants' active enforcement of the Handgun Ban is evidenced by the prosecution of Massachusetts resident Michael A. Wheelock, who faced criminal charges stemming from the alleged sale of firearms not approved for sale in Massachusetts. MetroWest Daily News, April 4, 2013, *Northborough resident and former gun shop owner charged with selling illegal guns*, online at https://bit.ly/3JJIa10 (last visited September 21, 2023).

129.   In short, the Handgun Ban and Defendants' enforcement thereof prohibits the acquisition and possession of arms in common use for self-defense and other lawful purposes (and thus arms that are not both dangerous *and* unusual), nothing in the "Nation's historical tradition of firearm regulation" supports the

Handgun Ban, *Bruen*, 142 S. Ct. at 2130, and thus the Handgun Ban and Defendants' enforcement thereof violates the right to keep and bear arms protected under the Second and Fourteenth Amendments.

130.    Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the Commonwealth of Massachusetts not disqualified from exercising their fundamental, individual right to keep and bear arms, including Plaintiffs, through Defendants' enforcement and implementation of the prohibitions under the Handgun Ban, which has and will continue to infringe upon and prevent, by criminal sanction, the exercise of the fundamental right to keep and bear arms unless and until redressed through the relief Plaintiffs seek herein. *See* 42 U.S.C. § 1983.

131.    Because Defendants' enforcement of the purchase prohibitions under the Handgun Ban violates Plaintiffs' rights under the Second and Fourteenth Amendments, Plaintiffs are entitled to declaratory and injunctive relief.

132.    Defendants' Handgun Ban is thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

133.    For all these reasons, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

1.    A declaratory judgment that the Handgun Ban, as defined herein, violates the Second and Fourteenth Amendments to the United States Constitution;

2.    A permanent injunction restraining Defendants, their successors and assignees, and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who have notice of the injunction, from enforcing the Handgun Ban and preventing otherwise qualified individuals from purchasing and possessing new handguns that are proscribed from sale under the Handgun Ban;

3.    Attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

4.      Such other and further legal and equitable relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

DATED: September 21, 2023

Respectfully submitted, the Plaintiffs,

/s/ *Richard C. Chambers. Jr.*, Esq.
Richard C. Chambers, Jr., Esq. (BBO# 651251)
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Richard@chamberslawoffice.com

Jason A. Guida (BBO# 667252)
Principe & Strasnick, P.C.
17 Lark Avenue
Saugus, MA 01906
Office: (617) 383-4652
jason@lawguida.com

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe, Suite A
Southport, NC 28461
Office: (910) 713-8804
law.rmd@gmail.com
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2023.

/s/ *Richard C. Chambers. Jr.*
Attorney for Plaintiffs

22